Case 6:23-cv-00035-RSB-CKM   Document 1   Filed 06/26/23   Page 1 of 16
Pageid#: 1

CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

6/26/2023
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
     DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

CHRISTINE GIBBONS,

      Plaintiff,

v.

BETTY ANN GIBBS, in her official capacity as Secretary of the Lynchburg Electoral Board, and in her personal capacity;
STEVEN TROXEL, in his official capacity as Vice Chair of the Lynchburg Electoral Board, and in his personal capacity; and
THE ELECTORAL BOARD OF THE CITY OF LYNCHBURG,

      Defendants.

No.   6:23CV00035

Hon.   Robert S. Ballou

**Jury trial demanded**

# COMPLAINT
## FOR DECLARATORY, INJUNCTIVE AND MONETARY RELIEF

*Introduction*

1. This is a First Amendment challenge to the impending ouster of Christine Gibbons, Lynchburg's general registrar of voters, by a new majority of the Lynchburg Electoral Board intent on pressing the partisan falsehood—widely known as the "Big Lie"—that the defeat of Donald Trump for President in 2020 must have been procured by fraud, and the ancillary supposition that local election administrators who are not part of their Republican faction are not to be trusted.

2.    In fact, Ms. Gibbons has been a competent, dedicated and scrupulously impartial registrar for the past five years, as shown by the Electoral Board's own evaluations and the numerous sworn declarations filed herewith. The Board's new two-member Republican majority, however, is convinced it has the power to remove her, regardless of her evident fine performance, and replace her with a stranger to election administration whose apparent chief qualification is that he belongs to the same partisan, social and religious groups as the two individual defendants.

3.    This Complaint seeks preliminary and permanent injunctive relief from Ms. Gibbons' ouster, as well as monetary damage relief against Ms. Gibbs and Mr. Troxel in their individual as well as official capacities.

## Parties

4.    Plaintiff Christine Gibbons is general registrar of voters of the City of Lynchburg. She was appointed to that post by a unanimous, bipartisan vote of the Lynchburg Electoral Board in 2018. She also serves as an officer of the Virginia Association of Voter Registrars, and in that capacity gives training in relevant legal requirements and best practices to other registrars in Virginia and to their staffs.

5.    Defendant Betty Ann Gibbs is Secretary of the Lynchburg Electoral Board. She was put forward for that position by the Lynchburg Republican Committee in 2022. She was an "officer of election," *i.e.*, a pollworker, at a precinct in Lynchburg. She has lodged a stream of baseless complaints against the registrar's office, and against Ms. Gibbons' conduct of election administration, since 2020.

6. Defendant Steven Troxel is vice chair of the Lynchburg Electoral Board. He was put forward for that post by the Lynchburg Republican City Committee in February 2023 at the end of a previous Board member's term.

7. Defendant Lynchburg Electoral Board is the entity charged with overseeing, under state statutory constraints, the administration of voter registration and primary and general elections in Lynchburg for all public offices, federal, state and local.

### *Jurisdiction and venue*

8. The Court has subject matter jurisdiction over this suit pursuant to 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution. The Court has jurisdiction over Ms. Gibbons' claims pursuant to 28 U.S.C. §§ 1331 and 1343(3).

9. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b), 28 U.S.C. § 127(b), and U.S. Dist. Ct. (W.D. Va.) Loc. Civ. R. 2(a)(6), because the events giving rise to Ms. Gibbons' claims occurred in the City of Lynchburg, Virginia.

### *Facts*

10. Since June 1, 2018, plaintiff Christine Gibbons has served as director of elections and general registrar (hereinafter "registrar") for the city of Lynchburg, Virginia.

11. As general registrar, Ms. Gibbons is an employee of the government of the City of Lynchburg under Va. Code § 24.2-122, and as such is subject to, and

protected by, the personnel policies and practices of the City, including protection from removal without cause.

12. Ms. Gibbons is also protected by Virginia election statutes that provide for no basis to remove her except for delinquencies of duty under Va. Code § 24.2-109, documented in yearly evaluations of her performance that the Electoral Board is required to conduct under Va. Code § 24.2-109.1.

13. The City of Lynchburg has an Electoral Board consisting of three members, appointed by the Chief Judge of the Lynchburg Circuit Court on the recommendations of local committees of the City's two major political parties, all under Va. Code § 24.2-106. The electoral board in each Virginia jurisdiction is the entity responsible for overseeing that jurisdiction's elections, and hiring its registrar and deputy registrars, under Va. Code § 24.2-109. The Lynchburg Electoral Board, like all other electoral boards in the Commonwealth, is required by Va. Code § 24.2-109.1 to conduct an annual performance review of the general registrar.

14. As of the filing of this Complaint, Lynchburg's Electoral Board consists of three members: chair David Neumeyer, vice chair Steven Troxel, and secretary Betty Ann Gibbs.

15. Mr. Troxel and Ms. Gibbs are members of the Republican Party.

16. Prior to joining the Lynchburg Electoral Board, from approximately 2016 through 2017 Ms. Gibbs served as an officer of election, *i.e.* a pollworker, for Campbell County (which adjoins Lynchburg).

17. While an officer of election in Campbell County, Ms. Gibbs obstructed the election process in her precinct on two occasions by inexplicably closing the electronic pollbooks during the day while elections were still in process.

18. In January 2019, Wendell Walker, then-chair of the Lynchburg Republican City Committee, withdrew Ms. Gibbs' nomination to the Lynchburg Electoral Board because of these and other improprieties she had engaged in during elections.

19. In the weeks preceding the nationwide general election of November 3, 2020, Ms. Gibbs' baseless but loudly voiced suspicion of local election administrators only increased.

20. On October 7, 2020, Ms. Gibbs sat in the registrar's office for four continuous hours, closely watching the office's staff with the intent to intimidate them.

21. On October 15, 2020, Ms. Betty Gibbs accused Lynchburg's General Registrar's Office of "corruption."

22. On October 30, 2020, Eric Harrison, Mr. Walker's successor as chair of the Lynchburg Republican City Committee, filed a petition for writ of mandamus in Lynchburg City Circuit Court against Ms. Gibbons in her official capacity as general registrar. The writ was denied and the action was dismissed with prejudice.

23. On the day that the just-described mandamus petition was filed, October 30, 2020, Betty Gibbs wrote and posted the following on Facebook: "When

5

the Electoral Board, Registrar, and Deputy Registrar are removed, things will change. I'm glad City Council has been alerted. #DraintheLynchburgSwamp."

24. On January 6, 2021, Ms. Gibbs was among a reported 50 Lynchburg-area residents who traveled by bus to Washington to the election protest called by former President Trump, because, she was quoted by a newspaper as saying, "I hope that the number of us sends a message to elected officials that we are not going to sit back and watch this election being stolen."

25. Ms. Gibbs was, by choice, in the vicinity of the U.S. Capitol during the riot of that afternoon.

26. In the run-up to the November 2, 2021, Virginia statewide general election, the Lynchburg Republican City Committee placed its chair, Veronica Bratton, and Ms. Gibbs in charge of designating "authorized representatives," *i.e.*, official Republican pollwatchers, for polling places in Lynchburg.

27. At that election, the Republican authorized representatives consistently followed election officers uncomfortably closely and refused to give privacy to voters casting "curbside voting" ballots.

28. At the close of the polls at that same election, Republican authorized representatives asked election officials at numerous precincts to sign a form, which these authorized representatives had brought with them to the polls, on which they had written total votes-cast numbers by candidate from the voting tabulation machines. Authorized Representatives became belligerent when election officials declined to sign these documents.

6

29. The form just described bore no indication that it was created by the local Republican Party. The form carried only a letterhead with the polling station's address and the words "Office of the Registrar," implying that the form was an official election document.

30. Staff of the registrar's office raised the issue with Lynchburg Republican City Committee chair Eric Harrison. However, the authorized representatives Mr. Harrison and Ms. Gibbs had designated were not instructed to refrain from attempts to get election officials to sign these forms, nor were the forms withdrawn or their appearance altered to clarify they were not official documents of the registrar's office.

31. At one Lynchburg polling station, a Republican authorized representative named Sharon Toone attempted to get Kim Conner, an experienced deputy registrar, to sign the above-mentioned document. When Ms. Conner declined, Ms. Toone became belligerent and said she was not going to "let you steal the election again." She then yelled, at the election officials, "You are all Democrats here," and accused them of dishonesty in the execution of their duties.

32. On this same election night, November 2, 2021, after the close of the polls, Republican authorized representatives at substantially every polling station in the city asked to "see the tapes," *i.e.,* the paper tabulation strips, somewhat like narrower versions of commonly used cash register tapes, that are produced by the voting equipment. Under standard procedure, followed in every instance at this election, each polling station's chief election officer laid out the tapes from the

voting equipment in full view of the authorized representatives, as well as called out the numbers for all present to hear. That was apparently not sufficient for the Republican authorized representatives, who insisted on being given the tapes in their hands.

33. In the city's largest polling station, Crosspoint Baptist Church, a Republican authorized representative demanded, "I need to have the tape," and loudly confronted election officials. The incident was reported and documented. The affected pollworker at Crosspoint telephoned Ms. Gibbons, who heard the Republican representative yelling at the pollworker, "Give me the tape! I need to see the tape!" The pollworker informed Ms. Gibbons that the tape was already laid out on the table in full view. Meanwhile a crowd of approximately 30 people banged for several minutes on the outside doors of the polling station with the same demand. Three pollworkers affected by Republican representatives' harassment, at the Crosspoint precinct and the Liberty University Vine Center precinct, thereafter resigned as pollworkers for further elections because the harassment had been intolerable. Crosspoint Church thereafter declined to serve as a polling station for the same reason, forcing a precinct relocation.

34. As a result of these 2021 election incidents, Ms. Gibbons and her staff accelerated, in collaboration with a Liberty University faculty member, the registrar's office's existing plans to create an online video training module for partisan pollwatchers, complete with a test of knowledge for trainees.

35. In December 2021, Mr. Harrison, the Republican Party chair, nominated Betty Gibbs to the Electoral Board, fully aware of her antipathy toward Ms. Gibbons.

36. In January 2022, Ms. Gibbs became Secretary of the Electoral Board.

37. As an Electoral Board member, Ms. Gibbs spoke only to those members of the registrar's office staff who she believed were Republicans. She consistently showed hostility toward other employees, particularly Black employees.

38. On September 22, 2022, Ms. Gibbs stated to deputy registrar Aimee Mayer that when Gibbs was "in charge" she would immediately "delete" from the voter rolls anyone whose mailed absentee ballot was returned as undeliverable, even though that would violate Virginia Board of Elections procedures as well as the National Voter Registration Act of 1993.

39. In October 2022, Curt Diemer of Lynchburg, a local Republican political activist and a former aide to Republican state legislators in Richmond, who had served as a pollworker in prior Lynchburg elections, commented to Ms. Gibbons that "the tea leaves" showed that Ms. Gibbons would not be reappointed by the new Electoral Board majority, and that Republicans understandably wanted "their own person" to serve as general registrar.

40. In December 2022, the term of an Electoral Board member came to an end, and the Lynchburg Republican City Committee proposed Mr. Troxel to replace that individual on the Board. He took his seat in January 2023.

41. On March 2, 2023, Mr. Troxel asked Ms. Gibbons to provide a virtual meeting link to a Lynchburg Electoral Board meeting that evening for Republican political activist Clara Belle Wheeler, a former vice chair of the Virginia State Board of Elections and a member of a "coalition" calling itself "Virginia Fair Elections," a group known for amplifying and encouraging Republican claims that the 2020 presidential election was tainted by fraud.

42. Ms. Wheeler has created training materials for Republican pollwatchers that contain information counter to Virginia Department of Elections training and guidance for election officials.

43. Ms. Wheeler was reported in 2017, while serving as a State Board of Elections member, to have campaigned "heavily" for Republican candidates, and to have made unsubstantiated claims that Democratic Party members in Virginia were orchestrating "massive voter fraud."

44. At or after the March 2, 2023, electoral board meeting, Mr. Troxel and Ms. Gibbs introduced and provided the majority vote for new Lynchburg Electoral Board end-of-term procedures for the registrar and deputy registrars, and Mr. Troxel indicated that Ms. Wheeler had had "input" into the creation of those policies.

45. At the Lynchburg Electoral Board meeting of March 20, 2023, the Board's two Republican members, Ms. Gibbs and Mr. Troxel, voted to open Ms. Gibbons' general registrar position to new employment applications.

46. The Electoral Board accepted such applications from March 20, 2023, through April 30, 2023, and instructed that all of them be sent directly to Ms. Gibbs.

47. The Electoral Board instructed Ms. Gibbons that she would be required to re-apply for her position as registrar.

48. Mr. Troxel and Ms. Gibbs chose to interview Ms. Gibbons and three other individuals for the registrar position. One of those three individuals was Curt Diemer, a local Republican political activist and a former aide to Republican state legislators in Richmond, who had served as a pollworker in prior Lynchburg elections, and who had commented to Ms. Gibbons in October 2022 that "the tea leaves" showed that she would not be reappointed by the new Electoral Board majority, and that Republicans understandably wanted "their own person" to serve as general registrar.

49. The second of the three was former prison guard Luis Gutierrez, a self-described "proud Republican" from Texas, who had worked briefly at Fork Union Military Academy in neighboring Fluvanna County and resigned under dubious circumstances. He had been appointed earlier in 2023 as registrar in Buckingham County by the newly majority-Republican electoral board, although he had no prior experience administering elections, but had been fired by the same board after less than a month on the job, reportedly for falsifying his resume, after reportedly alienating numerous local residents with his belligerent behavior as registrar.

11

50. The third of the three was Daniel Pense, a former corporate information technology professional whose only experience administering elections was occasional prior service as a pollworker on election day. Mr. Pense is a friend of Ms. Gibbs and a regular attendee at Lynchburg Republican City Committee meetings. He also attends, with his spouse Joan Pense, a "Lifegroup" Bible study group, led by Republican City Committee chair Veronica Bratton and hosted in her home, which is affiliated with the Thomas Road Baptist Church in Lynchburg and includes Ms. Gibbs and local Republican Party activists Sue Stowell, Karen Quigg, and Chris Quigg, all of whom have been Republican party authorized representatives to Lynchburg elections.

51. On May 10, 2023, after the window for applications for the registrar's position had passed, Ms. Gibbs and Mr. Troxel came to the registrar's office to view Ms. Gibbons' past performance evaluations. Ms. Gibbs and Mr. Troxel had not seen Ms. Gibbons' performance evaluations, much less identified any fault with her performance, before deciding to replace her.

52. On May 18, 2023, undersigned counsel sent a letter to Ms. Gibbs and Mr. Troxel explaining that ousting Ms. Gibbons to serve partisan political ulteriors, without performance cause, would violate the First Amendment, and imploring them to consider "the expense you will incur . . . , as well as the disrepute you will bring on yourselves and the electoral process in Lynchburg, if you undertake to remove and replace Ms. Gibbons as you apparently intend."

12

53. On May 30, 2023, Ms. Gibbs and Mr. Troxel informed Ms. Gibbons that she would not be reappointed as general registrar at the end of her current term on June 30, 2023.

54. At a meeting of the Lynchburg Electoral Board on June 1, 2023, Ms. Gibbs and Mr. Troxel formally voted to remove Ms. Gibbons and hire Daniel Pense to replace her as general registrar.

55. Mr. Pense makes no secret of his membership in the Republican Party, unlike Ms. Gibbons, who on principle has not disclosed her party of registration or her candidate preferences to the public, to her staff, or even to her counsel in this case, and steers assiduously clear of partisan politics in all her public appearances and professional interactions.

56. Mr. Troxel's and Ms. Gibbs' decision to remove and replace Ms. Gibbons was not based on any deficiencies in her performance, but was motivated by partisan political animus toward her non-partisanship.

## Count I:
### *Politically motivated dismissal in violation of the federal Constitution*
### (all defendants, all capacities)

57. All allegations of this Complaint are hereby incorporated into this Count by reference as if fully set forth herein.

58. By seeking, proposing and voting to remove Ms. Gibbons as Lynchburg registrar in favor of a member of their political faction, as alleged herein, the two individual defendants and the entity defendant, jointly and severally, have violated

her freedom of expression and political association protected by the First Amendment to the federal Constitution.

59. The rights described in the preceding paragraph were clearly established at the time of the violations, described herein, of constitutional rights of Ms. Gibbons of which reasonable officials should have known.

60. Because the Electoral Board's decisions constitute the policy of the Board, and because the Board's members are the highest policymakers in that body, their actions constitute policy for purposes of Section 1983 entity liability under *Monell v. New York City Dept. of Social Svcs.,* 436 U.S. 658 (1978).

61. Additionally, to the extent that Ms. Gibbs and Mr. Troxel are proven at trial to have engaged in the violations described herein in their personal capacities, they are liable to Ms. Gibbons for those violations as individuals, regardless of whether *Monell* liability is deemed to attach to their official-capacity actions as members of the Board or to the Board in its official capacity.

62. The violations complained of herein have caused Ms. Gibbons stress, heartache, disappointment, grief, anger, loss of sleep, and loss of quality of life, all of which are no less real because she has been required, and has succeeded, to absorb and contain them in order to continue performing her job. These harms should be compensated by money damages.

63. However, there is no fully adequate remedy at law for the infringements complained of herein, meaning that injunctive relief is justified and required for full redress of Ms. Gibbons' claims.

64. The violations complained of herein were willful, deliberate and intentional, and as such warrant the imposition of punitive damages.

## *Prayer for relief*

WHEREFORE, plaintiff Christine Gibbons prays for the following relief:

65. A declaration that in seeking to remove Christine Gibbons as Lynchburg general registrar, the defendants, jointly and severally, have violated her rights of free expression and association under the First Amendment to the federal Constitution.

66. A temporary restraining order and preliminary and permanent injunction forbidding the defendants from politically motivated dismissal of Ms. Gibbons from her registrar's position, now or at any time in the future, including but not limited to the end of future performance evaluation periods; forbidding the defendants or any of them, or their agents or others at their direction or with their encouragement, from harassment or intimidation of Ms. Gibbons or unreasonable interference with her performance of her duties; and forbidding retaliation against her by the defendants or any of them, or by their agents or others at their direction or with their encouragement, for resisting their harassment or intimidation or for bringing this suit;

67. An award of monetary damages sufficient to compensate her for the harms alleged herein;

68. Reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and costs of suit under that provision and 28 U.S.C. § 1920; and

69. Such other and further relief as the Court deems just and proper.

### *Jury demand*

70. Plaintiff demands trial by jury on all claims so triable.

Respectfully submitted,

_____
Stephen B. Pershing
Virginia Bar No. 31012
Sacred B. Huff
Admission *pro hac vice* pending
KALIJARVI, CHUZI, NEWMAN & FITCH, P.C.
818 Connecticut Ave., N.W., Suite 1000
Washington, D.C. 20006
(202) 331-9260
spershing@kcnlaw.com
shuff@kcnlaw.com

Dated: June 26, 2023