CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
8/25/2023
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| **CHRISTINE GIBBONS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 6:23-cv-00035 |
| | ) | |
| v. | ) | Hon. Robert S. Ballou |
| | ) | United States District Judge |
| **BETTY ANN GIBBS et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Betty Ann Gibbs and Steven Troxel, two of three members of the Lynchburg Electoral Board (the "Board"), voted not to reappoint Christine Gibbons as General Registrar of the City of Lynchburg when her term expired June 30, 2023. Gibbons contends that the decision not to reappoint her was based on political patronage in violation of the First and Fourteenth Amendments. She seeks preliminary and permanent injunctive relief against the Board and Gibbs and Troxel in their official capacities for reinstatement as the City of Lynchburg General Registrar. She also seeks money damages against Gibbs and Troxel in their individual capacities. Defendants moved to dismiss the Board and the official capacity claims on the basis that this court lacks subject matter jurisdiction under the Eleventh Amendment.[1] I **GRANT** Defendants' motion and **DISMISS** the complaint as to the Board on Eleventh Amendment grounds, but **DENY** the motion as to Gibbons's claims against Gibbs and Troxel in their official capacities.

---

[1] Gibbs and Troxel have filed a separate Rule 12(c) motion to dismiss the claims against them in their individual capacities.

1

I.      **Background**

I accept the following facts as true for the purpose of the motion to dismiss and draw all reasonable inferences in Plaintiff's favor. See King v. Rubenstein, 825 F.3d 206, 212 (4th Cir. 2016).

Each county and city in Virginia has an electoral board responsible for the administration of local elections. Va. Code Ann. § 24.2-109(B). Each electoral board is overseen by the Virginia State Board of Elections and is comprised of three members: one Democrat, one Republican, and one representative from the party of the then serving Governor. Id. § 24.2-106. The chief judge of the local circuit court appoints the electoral board members on recommendations from local party committees. Id. § 24.2-106. The electoral boards in turn appoint a general registrar responsible for voter registration. Id. § 24.2-114. General registrars serve four-year terms and are subject to removal during their term for failure to discharge the duties of the office or for failure to receive or maintain the requisite certification under Virginia law. Id. § 24.2-109. The Board appointed Gibbons General Registrar in 2018. Gibbons's most recent term as General Registrar expired on June 30, 2023, and at that time, the Board consisted of two Republican members, Defendants Betty Ann Gibbs and Steven Troxel, and one Democratic member, David Neumeyer. Gibbs was appointed to her Board position on January 1, 2022, and Troxel a year later.

One of Troxel's first acts as a Board member was to draft a document entitled "Procedure for Appointing a General Registrar for the 2023-2027 Term," which the Board approved on March 20, 2023. Dkt. 21-1 Ex. A. The procedure announced "a job opening notice for the position of General Registrar/Director of Elections" and directed applicants to submit a resume, cover letter, and three references. Id. The Board notably did not exclude Gibbons from submitting her resume and other materials for consideration.

The Board received thirty-two applications and decided to interview four candidates—including Gibbons. At a May 17, 2023, closed session, the Board did not reappoint Gibbons, but selected Daniel Pense as General Registrar. Troxel states that he "considered Ms. Gibbons for the position since she had done the job for five years and had people who supported her, including Mr. Neumeyer," but that he decided against reappointment for several reasons. First, Troxel claims that Gibbons processed "early ballots without both party representatives present" during the November 2020 election. Dkt. 21-1 ¶ 17(a). Second, he asserts that Gibbons's deputies opened absentee ballots before verifying the names on the outside of the envelopes during the November 2021 election, in contravention of guidance from the Virginia Department of Elections. Id. ¶ 17(b). Troxel also states that he took issue with Gibbons's communication skills but does not identify specific problematic instances. Despite these complaints, Troxel "seriously considered" Gibbons and interviewed her for the position. Id. ¶ 13.

Gibbs states that she decided against Gibbons's reappointment because of her "open unwillingness to work with" Gibbs, but she does not identify specific instances of conflict. Dkt. 21-3 ¶ 3. Gibbs points to Gibbons's performance reviews as critiques of her job performance and communication abilities. Id. ¶ 8. She further took issue with an alleged error during the May 2020 Lynchburg City Council election and the November 2020 processing error that Troxel raised. And yet, Gibbs "considered Ms. Gibbons to be one of the candidates who was worthy of an interview." Id. ¶ 6.

The Board met in open session on June 1, 2023, and voted[2] not to reappoint Gibbons and to appoint Pense in her stead. Gibbons brings this action challenging the Board's decision as "motivated by partisan political animus." Dkt. 1 ¶ 56.

## II.     Analysis

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests a district court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "The burden of proving subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss is on the plaintiff, as the party asserting the court's jurisdiction." Brooks v. Branham, No. 6:22-cv-00033, 2023 WL 3761183, at *5 (W.D. Va. June 1, 2023) (citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). "When a defendant argues that a claim fails to allege facts upon which subject matter jurisdiction can be based, all the facts alleged in the complaint are assumed to be true and the plaintiff is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Id.

Defendants assert that the Eleventh Amendment precludes all claims against the Board, and against Gibbs and Troxel in their official capacities. The Eleventh Amendment provides that the "judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. The Supreme Court has extended the amendment's applicability to suits by citizens against their own states. Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 72–73 (2000). "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001).

---

[2] Gibbs and Troxel provided the majority vote not to reappoint Gibbons and to select Pense as General Registrar.

### a. Lynchburg Electoral Board

By extension, the Eleventh Amendment encompasses "certain actions against state agents and state instrumentalities." Regents of Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997). The Fourth Circuit has found that local electoral boards are state agencies, and their members are state officials for the purpose of Eleventh Amendment immunity. McConnell v. Adams, 829 F.2d 1319, 1327–28 (4th Cir. 1987). "[L]ocal governing bodies have no measurable control over the appointment, discharge, compensation, duties, or policies of the electoral boards. These are matters of state concern entrusted to state agencies." Id. at 1327.

As in McConnell, "[t]here are two methods by which a state's eleventh amendment immunity may be overcome, and neither method is applicable here." Id. at 1328. First, Congress may explicitly legislate to abrogate this immunity. Gibbons brings her constitutional challenges under 42 U.S.C. § 1983. Dkt. 1 ¶¶ 60–61. "Section 1983 'creates a cause of action against any person who, acting under color of state law, abridges a right arising under the Constitution or laws of the United States.'" Aleman v. City of Charlotte, No. 21-2223, slip op. at 33–34 (4th Cir. Aug. 16, 2023) (quoting Cooper v. Sheehan, 735 F.3d 153, 158 (4th Cir. 2013)). However, § 1983 "does not abrogate eleventh amendment immunity." McConnell, 829 F.2d at 1328 (citing Quern v. Jordan, 440 U.S. 332, 341 (1979)). Second, the state may voluntarily waive its eleventh amendment immunity. However, Virginia has not done so. Id. at 1327.

Gibbons urges that "nothing of substance is gained or lost for either side by allowing the Board entity to remain as a defendant." Dkt. 35 at 6. Not so. As local electoral boards are considered state agencies, the suit against the Lynchburg Electoral Board is a suit against the state, and thus, the Eleventh Amendment divests this court of subject matter jurisdiction over the

electoral board as a "state instrumentality." I **DISMISS** the complaint against the Board. Doe, 519 U.S. at 429; McConnell, 829 F.2d at 1328.[3]

### b. Gibbs and Troxel

An action brought against a state officer in their official capacity is a suit against the official's office. Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989). In an official-capacity claim, the relief is in fact against the official's office and thus, against the sovereign itself. For this reason, an official capacity suit against a state officer which seeks retrospective relief (money damages) for a violation of federal law is barred under the Eleventh Amendment. An exception to this general rule exists in suits against a state officer acting in their official capacity which seeks prospective relief from an ongoing violation of federal law. Ex parte Young, 209 U.S. 123 (1908). Such an action is not a suit against the state for Eleventh Amendment purposes and the official does not have Eleventh Amendment immunity. McBurney v. Cuccinelli, 616 F.3d 393, 399 (4th Cir. 2010). In those cases, "state officers or agents acting in violation of the Constitution are 'stripped of their official or representative character and are subjected in their person to the consequences of their individual conduct.'" Indus. Servs. Grp., Inc. v. Dobson, 68 F.4th 155, 163 (4th Cir. 2023) (quoting Republic of Paraguay v. Allen, 134 F.3d 622, 627 (4th Cir. 1998)). Therefore the "exception 'allows private citizens, in proper cases, to petition a federal court to enjoin State officials in their official capacities from engaging in future conduct that would violate the Constitution or a federal statute.'" Id. (quoting Antrican v. Odom, 290 F.3d 178, 184 (4th Cir. 2002)). "To satisfy this exception, 'a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law

---

[3] The McConnell Court affirmed the injunctions against the electoral boards and their members to reinstate the registrars who were not reappointed for political reasons. 829 F.2d at 1329–30. The Court did not discuss Eleventh Amendment immunity at length in this context.

and seeks relief properly characterized as prospective.'" Id. (quoting Verizon Md. Inc. v. Pub. Servs. Comm'n, 535 U.S. 635, 645 (2002)). To qualify for the Ex parte Young exception, a plaintiff "need not *prove* that Defendants' alleged . . . actions are an ongoing or continuous violation of [federal law]. Rather, it is sufficient that [the] Complaint merely *alleges* the ongoing behavior." Id. at 164 (emphasis in original).

Ex parte Young permits official capacity suits against state officers or state officials to remedy ongoing violations of federal law. 209 U.S. at 178. An official capacity claim may be properly brought against a state official who has some connection with the enforcement of a law, policy, or action challenged as a violation of federal law. S.C. Wildlife Fed'n v. Limehouse, 549 F.3d 324, 332 (4th Cir. 2008). The exception in Ex parte Young exists to ensure that those officials with the authority to enforce the law or policy of the state comply with the Constitution when doing so. 209 U.S. at 161. "This 'special relation' requirement ensures that the appropriate party is before the federal court, so as not to interfere with the lawful discretion of state officials." Limehouse,, at 332–33 (citing Ex parte Young, 209 U.S. at 158–59). This requirement precludes injunctive actions "where the relationship between the state official sought to be enjoined and the enforcement of the state statute is significantly attenuated." Id. at 333. "'[S]pecial relation' under Ex parte Young has served as a measure of *proximity to* and *responsibility for* the challenged state action." Id. (emphasis in original).

Gibbs and Troxel, as Board members, are closely connected with the decision of whether to reappoint Gibbons as the Board is authorized by statute to appoint the general registrar. Va. Code Ann. § 24.2-114. And the Board acts through its members and their votes. If the Board is tasked with appointment—and removal—of the general registrar, then its members have sufficient "proximity to and responsibility for the challenged state action." Limehouse, 549 F.3d

7

at 333. "The fact that the state officer, by virtue of his [or her] office, has some connection with the enforcement of the act, is the important and material fact." Ex parte Young, 209 U.S. at 157.

The exception is designed to provide prospective relief to individuals who continue to suffer violations of federal law at the hands of state officials. Dobson, 68 F.4th at 163. Here, Gibbons alleges that political motivations governed the decision not to reappoint her as general registrar. Such a decision constitutes an ongoing violation of federal law. McConnell, 829 F.2d at 1329–30; see also Coakley v. Welch, 877 F.2d 304, 305 (4th Cir. 1989) (recognizing that McConnell determined that "Virginia's failure to reappoint the registrars is . . . an 'ongoing violation.'"). Such a wrong falls squarely within the ambit of Ex parte Young.

Defendants assert that Ex parte Young does not apply here because "neither Gibbs nor Troxel is independently possessed of the capacity to impose the relief [Gibbons] seeks." Dkt. 20 at 5. The essence of this argument is that Gibbs and Troxel each only have one vote toward Board decisions, and one vote is insufficient to direct Board action. Defendants rely upon two recent opinions in the Eastern District of Virginia. In Stewart v. Nottoway County and Caldwell v. Nottoway County, the court dismissed complaints brought by the former Nottoway County general registrar and a deputy registrar against the Nottoway County Electoral Board and its members which alleged they were dismissed from their positions for political reasons. Stewart, No. 3:22-cv-635, 2023 WL 4849936 (E.D. Va. July 28, 2023); Caldwell, No. 3:22-cv-636, 2023 WL 4850156 (E.D. Va. July 28, 2023).[4] The court concluded that "[b]ecause the authority to reinstate Plaintiff does not lie with the individual members, as none of them can unilaterally reinstate Plaintiff, that action would be taken by the Board itself, acting through a majority of its

---

[4] The two opinions are substantially the same and the Stewart case concerned the general registrar, so I limit my discussion to the that opinion.

members. Thus, Plaintiff cannot allege that the individual Board members are committing ongoing violations of federal law." Stewart, 2023 WL 4849936, at *8. Ex parte Young, however, contemplates an official-capacity action against an official involving an ongoing violation of federal law. The Board members—being the officials responsible for decisions to reappoint a general registrar—are proper defendants as Ex parte Young exists to ensure that officials vested with that power comply with the Constitution.

Defendants acknowledge that their position contradicts the Fourth Circuit's decision in McConnell, where the Court ordered the electoral boards to reinstate the registrars.[5] 829 F.2d at 1330. Indeed, McConnell involved consolidated appeals of district court orders reinstating three plaintiffs who had not been reappointed as registrars. Id. at 1322. In Kilgore v. McClelland, two democratically controlled electoral boards did not reappoint their republican general registrars. 637 F. Supp. 1241, 1248–49 (W.D. Va. 1985). Separate juries returned verdicts in favor of both plaintiffs and awarded damages. Id. at 1243. The district court enjoined the electoral boards and their members to reinstate the general registrars to their prior positions. Id. at 1248–49. And in Burchett v. Cheek, a democratically controlled electoral board did not reappoint a republican assistant registrar. 637 F. Supp. 1249, 1253 (W.D. Va. 1985). A jury returned a verdict in favor of the plaintiff and the district court enjoined the electoral board and members to reinstate the plaintiff. Id. at 1253. In McConnell, the Fourth Circuit expressly affirmed the prospective relief as to all three plaintiffs, stating that "[s]ince the state's eleventh amendment immunity does not protect it from suits for injunctive relief governing its officials' future conduct, the order of the

---

[5] The Stewart and Caldwell decisions did not address the applicability of McConnell in their analyses of whether Ex parte Young applies to the assertion of Eleventh Amendment immunity by the electoral board members. Stewart, 2023 WL 4849936, at *8; Caldwell, 2023 WL 4850156, at *9.

9

district court requiring the appellants to rehire the appellees is [] affirmed." McConnell, 829 F.2d at 1329–30. The Fourth Circuit again affirmed a district court's order reinstating a general registrar in Chester v. Wise County Electoral Board, 117 F.3d 1413 (Table), 1997 WL 381964, at *5 (4th Cir. July 11, 1997). There, a republican controlled electoral board did not reappoint a democratic general registrar. A jury returned a verdict in favor of the registrar and the district court ordered reinstatement. Id. The Court reaffirmed McConnell, stating that "[i]n a case strikingly similar to this one, where two county registrars and an assistant registrar were not reappointed due to their political affiliations, this court affirmed the trial court's order requiring reinstatement." Id. (citing McConnell, 829 F.2d 1319).

  Defendants argue that the McConnell decision did not expressly analyze Eleventh Amendment immunity of either the electoral board or its members. But the opinion relied upon Ex parte Young to affirm the reinstatement decision. See McConnell, 829 F.2d at 1329–30. It aptly summarizes the exception to Eleventh Amendment immunity to challenge ongoing constitutional violations by state officials. Gibbs and Troxel are proper defendants[6] in their official capacities as members of the Lynchburg Electoral Board to the extent Gibbons seeks prospective relief (reinstatement) in this action. The motion to dismiss as to Gibbs and Troxel is **DENIED**.

---

[6] It is not clear why only Gibbs and Troxel, but not Neumeyer, were named as defendants in their official capacities. No party has raised whether Neumeyer should be added under Fed. R. Civ. P. 19 or 20.

### III.     Conclusion

For the reasons stated above, I **GRANT in part** and **DENY in part** Defendants' motion to dismiss. An appropriate order shall issue.

Entered:  August 25, 2023

*Robert S. Ballou*

Robert S. Ballou
United States District Judge