CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
11/16/2023
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| **CHRISTINE GIBBONS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 6:23-cv-00035 |
| | ) | |
| v. | ) | Hon. Robert S. Ballou |
| | ) | United States District Judge |
| **BETTY ANN GIBBS et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION

Plaintiff Christine Gibbons brought this action under 42 U.S.C. § 1983 claiming that Defendants Betty Ann Gibbs and Steven Troxel voted not to reappoint her as General Registrar of the City of Lynchburg because of her political views in violation of her First Amendment rights. Gibbons brought this action against Gibbs and Troxel in their official capacity seeking reinstatement as the General Registrar.[1] She also seeks monetary damages against Gibbs and Troxel in their individual capacities who have filed a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), asserting that the personal-capacity claims are barred by the Eleventh Amendment because the Commonwealth of Virginia is the real party in interest.[2] Dkt. 49.

---

[1] On August 25, 2023, I dismissed the Lynchburg Electoral Board because it is immune from suit in federal court under the Eleventh Amendment. Dkt. 55. I declined to dismiss the official-capacity claims against Gibbs and Troxel which seek only prospective, injunctive relief against them. See Ex parte Young, 209 U.S. 123 (1908). Gibbs and Troxel appealed this order, which is presently before the Fourth Circuit.

[2] Defendants' motion for judgment on the pleadings originally sought dismissal of all claims regardless of the capacity in which they were sued. However, the order addressing the official-capacity claims effectively trimmed this motion to seek judgment only on Gibbons's personal-capacity claims against Gibbs and Troxel for money damages under § 1983.

I **DENY** Defendants' motion concluding that Gibbs and Troxel, in their individual capacities, are the real parties in interest, not the Commonwealth of Virginia.

I.   Background

I accept the following facts as true for the purpose of the motion for judgment on the pleadings and draw all reasonable inferences in Gibbons's favor. See People for the Ethical Treatment of Animals v. U.S. Dep't of Agric., 861 F.3d 502, 506 (4th Cir. 2017).

Gibbons alleges that Gibbs and Troxel voted not to reappoint her as general registrar because she did not share their political views.[3] Dkt. 1 ¶ 2. The Board unanimously voted to appoint Gibbons to the post in 2018, and she served until the expiration of her term in June 2023. Gibbons oversaw several elections during this time, including the 2020 presidential election and 2021 Virginia gubernatorial election. During the 2020 election, Gibbs, not yet a member of the Board but rather a politically active local resident, accused the General Registrar's office of corruption and wrote on social media that "[w]hen the Electoral Board, Registrar, and Deputy Registrar are removed, things will change . . . #DraintheLynchburgSwamp." Id. ¶¶ 21, 23. Gibbs participated in the January 6, 2021, protest in Washington D.C. against the results of the 2020 election and stated that she "hope[d] that the number of us [at the January 6 protests] sends a message to elected officials that we are not going to sit back and watch this election being stolen." Id. ¶ 24. Gibbs was appointed to the Board in January 2022.

Troxel was appointed to the Board in January 2023.

---

[3] Gibbs and Troxel are two of the three members of the Lynchburg Electoral Board. The third member, David Neumeyer, is not a party to this action. The memorandum opinion granting in part and denying in part Defendants' motion to dismiss contains an overview of the Virginia electoral system. Dkt. 54.

Gibbons's term as general registrar expired on June 30, 2023. Gibbs and Troxel introduced new procedures to select the general registrar and opened the position to new applicants. They advised Gibbons that she must reapply if she wished to be considered for reappointment. These procedures also required that applicants send their materials directly to Gibbs.

Gibbs and Troxel interviewed four persons for the position, including Gibbons. They also went to the registrar's office to review Gibbons's prior performance evaluations for the first time. On June 1, 2023, Gibbs and Troxel voted not to reappoint Gibbons and to instead appoint Daniel Pense, a local resident and poll worker, to the post.[4] Gibbons alleges that "Mr. Pense makes no secret of his membership in the Republican party, unlike Ms. Gibbons, who on principle has not disclosed her party of registration or her candidate preferences to the public." Id. ¶ 55.

Gibbons filed a one-count complaint asserting that the decision to remove her as General Registrar violated her freedom of expression and political association rights guaranteed by the First Amendment. Dkt. 1 at ¶ 58. Further, Gibbons alleges that "to the extent Ms. Gibbs and Mr. Troxel are proven at trial to have engaged in the violations . . . in their personal capacities, they are liable to Ms. Gibbons for those violations as individuals." Id. at ¶ 61. She claims to have suffered emotional and other damages and seeks "an award of monetary damages sufficient to compensate her for the harms . . ." Id. at ¶¶ 62, 67.

---

[4] The Court infers that Neumeyer voted to reappoint Gibbons because the complaint alleges that "Ms. Gibbs and Mr. Troxel formally voted to remove Ms. Gibbons and hire Daniel Pense to replace her as general registrar," without making mention of Neumeyer. Dkt. 1 ¶ 54.

## II. Analysis

A motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). See People for the Ethical Treatment of Animals v. U.S. Dep't of Agric., 861 F.3d 502, 506 (4th Cir. 2017). "That is, such a motion should 'only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Id. (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

Gibbons alleges that Gibbs and Troxel are liable in their personal capacities because the failure to reappoint her "violated her freedom of expression and political association [rights] protected by the First Amendment to the federal Constitution." Dkt. 1 ¶¶ 58, 61. Gibbs and Troxel argue that the Commonwealth of Virginia—through the Board—is the real party in interest, and thus the Eleventh Amendment bars Gibbons from bringing claims for damages. Dkt. 50 at 2.

Evaluating whether Gibbons sued Gibbs and Troxel in their official or personal capacities is the first step in determining the real party in interest. "[O]fficial-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" Hafer v. Melo, 502 U.S. 21, 25 (1991) (quoting Kentucky v. Graham, 473 U.S. 159, 165 (1985)). Suits against state officials in their official capacities "should be treated as suits against the State." Id. "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's policy or custom must have played a part in the violation of federal law.'" Id.

"Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." Id. When a plaintiff brings a § 1983 action for damages against a state official in his personal capacity, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Id. The official need not have acted "in accordance with a governmental policy or custom," as required to bring an official-capacity § 1983 action. Id.; see also Suarez Corp. Indus. v. McGraw, 125 F.3d 222, 229 (4th Cir. 1997) (finding that a § 1983 action sought damages against defendants in their personal capacities in part because the complaint did not allege that the defendants were acting in accordance with a governmental policy or custom).

In Hafer v. Melo, the Supreme Court rejected the proposition that the Eleventh Amendment insulates a state official from a personal-capacity suit under § 1983 for damages arising from official acts. 502 U.S. at 31. There, several former employees of the Pennsylvania Auditor General's Office sued the newly elected auditor general for firing them based on their political affiliations. Id. at 23. They sued the auditor general in her personal capacity and sought money damages. Id. The auditor general asserted that § 1983 did not authorize suits against state officers for damages based upon actions taken in their official capacities. Id. at 24. She argued in the alternative that the Eleventh Amendment precluded such an action because "imposing personal liability on officeholders may infringe on state sovereignty by rendering government less effective." Id. at 29.

The Court rejected both arguments. First, the Court held that the term "person" as used in § 1983 includes state officials sued in their personal capacities because those officials "come[] to court as individuals," as opposed to officials sued in their official capacity, who "assume the identity of the government that employs them." Id. at 27. The Court explained that § 1983

5

contemplates a personal-capacity suit against a state official for his official actions because the statute "authorizes suits to redress deprivations of civil rights by persons acting 'under color of any [state] statute, ordinance, regulation, custom, or usage.'" Id. (citing 42 U.S.C. § 1983). The Court aptly stated:

> "The requirement of action under color of state law means that [the auditor general] may be liable for discharging [the former employees] precisely because of her authority as auditor general. We cannot accept the novel proposition that this same official authority insulates [the auditor general] from suit."

Id. at 27–28.

The Court similarly spurned the auditor general's Eleventh Amendment argument, stating that the amendment "does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983." Id. at 30 (quoting Scheuer v. Rhodes, 416 U.S. 232, 237 (1974)). The Court reasoned that while "imposing personal liability on state officers may hamper their performance of public duties," other doctrinal tools, such as certain personal immunity doctrines, mitigate those concerns. Id. at 31.

Defendants argue that Gibbons does not *really* seek damages from Gibbs and Troxel in their personal capacities—despite her explicit assertions to the contrary. See Dkt. 1 at 1 (suing Gibbs and Troxel in their personal capacities), ¶ 3 ("This Complaint seeks . . . monetary damage relief against Ms. Gibbs and Mr. Troxel in their individual . . . capacities."), ¶ 61 ("[T]o the extent that Ms. Gibbs and Mr. Troxel are proven at trial to have engaged in the violations described herein in their personal capacities, they are liable to Ms. Gibbons for those violations as individuals."). They suggest that the true effect of these personal-capacity claims is to subject the Commonwealth to suit in federal court in contravention of the Eleventh Amendment. At

6

base, they ask the Court to disregard Gibbons's pleading—in a motion for judgment on the pleadings—and find that the Commonwealth is the real party in interest.

A state is the real, substantial party in interest "when the 'relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter.'" Indus. Servs. Grp., Inc. v. Dobson, 68 F.4th 155, 166 (4th Cir. 2023) (quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 (1984)). Defendants ask the Court to conclude that the relief Gibbons seeks—money damages against Gibbs and Troxel in their personal capacities under § 1983—operate against the Commonwealth of Virginia.

Gibbs and Troxel assert that the personal-capacity claims actually seek relief from the Commonwealth, which the Eleventh Amendment prohibits. They argue that the relief sought is akin to that in Martin v. Wood, where the Fourth Circuit determined that a former nurse at a hospital run by the Commonwealth of Virginia could not sue her supervisors in their personal capacities for failure to pay overtime under the Fair Labor Standards Act because the Commonwealth was the real party in interest. 772 F.3d 192, 193 (4th Cir. 2014). The Martin Court stated that "[t]o identify the real, substantial party in interest, we thus examine *the substance* of the claims stated in the complaint." Id. at 196 (emphasis in original). The Court outlined several factors to consider:

> "(1) were the allegedly unlawful actions of the state officials tied inextricably to their official duties, (2) if the state officials had authorized the desired relief at the outset, would the burden have been born by the state; (3) would a judgment against the state officials be institutional and official in character, such that it would operate against the state; (4) were the actions of the state officials taken to further personal interests distinct from the State's interests; and (5) were the state officials' actions *ultra vires*."

Id. (emphasis in original) (internal citations and quotations omitted).

The Court applied these factors to determine that the supervisors in <u>Martin</u> were sued in their official capacities. <u>Id.</u> The court found that the plaintiff alleged that the supervisors "had authority to authorize overtime pay and refused to do so *and* . . . if they had authorized overtime pay, it would have been funded by [the state hospital]." <u>Id.</u> (emphasis in original). The Court concluded that the supervisors' "actions were inextricably tied to their official duties at the hospital." <u>Id.</u>

Here, Defendants attempt to use the <u>Martin</u> factors to show that the Commonwealth is the real party in interest with respect to Gibbons' personal-capacity claims against Gibbs and Troxel. Dkt. 50 at 4–8. They argue that (1) Gibbs and Troxel's votes not to reappoint Gibbons "are inextricably tied to their official duties as Electoral Board members;" (2) the Commonwealth would bear the burden of reappointing Gibbons; (3) any judgment in Gibbons' favor would be against the Commonwealth because "neither Troxel nor Gibbs independently have the power to provide such relief;"[5] and (4) the decision not to reappoint Gibbons was within the scope of their authority and thus not *ultra vires*. <u>Id.</u> Defendants tacitly acknowledge that Gibbons alleges that Gibbs and Troxel's actions were taken to further personal interests distinct from the State's interests. <u>Id.</u> at 8; see <u>Martin</u>, 772 F.3d at 196.

The Fourth Circuit has explicitly refused to apply the <u>Martin</u> factors to § 1983 claims. See <u>Adams v. Ferguson</u>, 884 F.3d 219, 225–26 (4th Cir. 2018). In <u>Adams</u>, the representative of a pretrial detainee who died in custody brought a § 1983 action for money damages against the Commissioner of the Virginia Department of Behavioral Health and Developmental Services in

---

[5] Defendants conflate the kind of relief Gibbons seeks in her personal-capacity claims which seek money damages with the relief she seeks in her official-capacity claims asking to be reinstated as the general registrar. A judgment for damages is not "institutional and official in character such that it would operate against the State." <u>Martin</u>, 772 F.3d at 196.

her personal capacity alleging that the commissioner was grossly negligent when she willfully withheld medical care from the pretrial detainee. Id. at 222–23. The Commissioner asserted that application of the Martin factors showed that the Commonwealth was the real party in interest. Id. at 225. The Court rejected the Commissioner's argument, explaining that Martin concerned an action under the Fair Labor Standards Act, through which "Congress manifested a desire to exclusively define the private remedies available" to FLSA litigants. Id. The Court reasoned that "[a]pplying the Martin factors, which focus on the official character of the defendant's actions, to § 1983 claims would 'absolutely immunize state officials from person liability for acts within their authority and necessary to fulfilling governmental responsibilities.'" Id. at 226 (quoting Hafer, 502 U.S. at 28). The Court "refuse[d] to apply to § 1983 these factors, which [the Martin Court] articulated for use in considering claims under a very different statute, and which would undermine the very purpose of § 1983." Id.

Defendants give short shrift to Adams by claiming that it "is factually distinguishable because it concerned the defendants' individual acts," whereas here, Gibbons's complaint concerns actions taken by Gibbs and Troxel in their official capacities as members of the Lynchburg Electoral Board. Dkt. 50 at 5 n.2. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161 (1992) (citations omitted). The Adams Court was clear: "[w]e refuse to apply to § 1983 claims these factors . . . which would undermine the very purpose of § 1983." 884 F.3d at 226; see also Manion v. N.C. Med. Bd., No. 5:16-cv-63, 2016 WL 4523902, at *5 n.3 (E.D.N.C. Aug. 22, 2016) (refusing to apply Martin to a § 1983 claim for damages).

9

Certainly, the "mere incantation" in a complaint of an individual capacity claim against a defendant is insufficient on its own to make out such a claim, Dillow v. Virginia Polytechnic Institute and State University, No. 7:22-cv-00280, 2023 WL 2320765, at *7 (W.D. Va. 2023), but Gibbons makes clear in the Complaint that she seeks to establish personal liability against Gibbs and Troxel. Thus, "to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right," and "the plaintiff in a personal-capacity suit need not establish a connection to governmental policy or custom." Murphy v. Virginia, No. 21-1253, 2022 WL 17484286, at *2 (4th Cir. 2022) (quoting Hafer, 502 U.S. at 31).

### III. Conclusion

I conclude that the complaint adequately asserts a claim under § 1983 against Gibbs and Troxel in their personal capacities and that the defendants—not the Commonwealth—are the real parties in interest. The motion for judgment on the pleadings is **DENIED**. Dkt. 49. An appropriate order shall issue.

Entered:  November 16, 2023

*Robert S. Ballou*

Robert S. Ballou
United States District Judge